Bebtbam Haskett, J.
Henry M. McCarthy, upon being told by the Superintendent of Union Free School District No. 3, Town of Huntington, that he would not be rehired in September
1972 to teach in the Toaz Junior High School, brought this article 78 proceeding protesting the claimed violation of his tenure and seniority rights. The Superintendent and District Board of Education, while recognizing that Mr. McCarthy had taught continuously at 'Toaz since September 1, 1968, moved to dismiss the petition on the dual grounds that a prior arbitration decision has finally determined the issue, and, in any event, tenure in his case was never achieved.
*227 A. ARBITRATION AND ARTICLE 78 REVIEW
The board’s first contention, that this proceeding is barred by virtue of the arbitration, is wholly without merit.
While Mr. McCarthy’s contentions here were referred to and reviewed in arbitration as provided under the collective bargaining agreement between the school and teachers association, the arbitrator merely found that that agreement “ simply does not deal with the rights alleged in the present grievance ’ ’. The arbitration decision related only to Mr. McCarthy’s rights under the collective bargaining agreement. Even then, it would be nonetheless judicially reviewable if claimed to be arbitrary or erroneous as a matter of law, and in any event, does not foreclose or even impinge upon review of a claimed denial of rights arising outside of the agreement, such as the statutory tenure and seniority rights asserted here. (Matter of Dreyfuss v. Board of Educ., 72 Misc 2d 703.) The controversy is now presented de novo without any prigr substantive determination of its merits, and is properly withjp. this court’s jurisdiction pursuant to CPLE 7803.
B. SEQUENCE OP EVENTS
The facts iq |his case are largely undisputed. In September, 1968 Mr. McCarthy was first hired, and taught as a junior high school speech and drama instructor. In January, 1971, he requested a change in position to the English Department where a vacancy was due to open up in September of that year. After the Superintendent had written in June, 1971 that McCarthy’s services were terminated “as of the end of the school year, due to the abolishment of a teaching position ”, Mr. McCarthy was, in fact, placed in a teaching position in the English Department at Toaz, which had opened up because of another teacher’s taking maternity leave.
In February, 1972, he was informed by letter that no position would be available for him in the fall of 1972. This proceeding was initially commenced in June, 1972 and was stayed until now pending the outcome of arbitration.
C. AREA TENURE NOT SPLIT
1. DIVISION BY GRADE LEVEL OR SPECIFIED SUBJECT
The board first contends that Mr. McCarthy’s four years of teaching are not counted together towards tenure but are split between the two and three-quarters yeqrs spent as a speech and drama teacher, and the one year, 1971-72, while a member of the *228 English Department, citing Matter of Becker v. Board of Educ. (9 NY 2d 111, 118).
Becker recognized that the statutory right to tenure has been moulded by rulings and decisions of the State Education Commissioner into probationary ‘ ‘ area ’ ’ appointments in ‘ ‘ various teaching fields ”. It was followed by Matter of Van Heusen v. Board of Educ. (26 A D 2d 721, 722) in which the Third Department further refined the concept: “ The definition of tenure adopted by the Court of Appeals in Matter of Becker v. Board of Educ. (9 N Y 2d 111), is that of ‘ area tenure ’. 1 Area tenure ’ is descriptive of tenure at certain grade levels, e.g., elementary, secondary, kindergarten, industrial arts, etc., and also to certain specified subjects including ‘ physical education, music, art and vocational subjects ’. Apart from these specified subjects, tenure is not available according to course subjects, but is only descriptive of grade level. The petitioner’s tenure is, therefore, that of a ‘ secondary school teacher ’ and not of secondary school mathematics teacher ”.
2. DISTINCTIONS ABE LEGAL, NOT ADMINISTBATIVE
Moreover, the notion that designation of separate tenure areas is solely an administrative function of local school districts (Matter of Fitzgibbons, 8 Ed. Dept. Rep. 205) has been rejected. In Matter of Baer (11 Ed. Dept. Rep. 57), Commissioner’s Decision No. 8335 (May 21, 1971), a decision heavily relied upon by respondents here, the Commissioner upheld a local school district denial of tenure to a junior high school teacher whose three years of service had been split between general science and social studies. A Special Term of the Supreme Court reversed the Commissioner, relying upon Becker and Van Heusen, and found erroneous the “ fractionalization of the secondary tenure area ”. (Matter of Baer v. Nyquist, 71 Misc 2d 471.) This was affirmed in Matter of Baer v. Nyquist (40 A D 2d 925) holding that local school districts could not unilaterally create tenure areas.
3. NEED FOR FAIR OBJECTIVE STANDARDS
“ Tenure area ” designations represent more than mere internal structural descriptions, because of the direct effect they have upon teachers’ rights. While a school, for its own administrative reasons, ipay wish to use separate classifications for subjects taught at the same grade level, the creating of separate tenure areas carries with it the dramatic result of depriving probationary teachers of credit towards tenure when shifted to teach other subjects even at the same level of instruction. *229 The touchstone for teacher tenure must be fairness and comparability of services rendered over a continuous period, not the erection of barriers artificially interrupting credit for a continuous span of relatively similar instruction. For this reason, grade levels and certain “ specified subjects ” (Matter of Van Heusen v. Board of Educ., 26 A D 2d 721, supra) are used to denote different tenure areas. “Specified subjects” tend primarily to be vocational, artistic, or “ occasional” subjects. (Matter of Cuff, 9 Ed. Dept. Rep. 101, 102-103; Matter of Adler, 8 Ed. Dept. Rep. 6, 7.)
4. MB. MO caethy’s pabticulab situation
Respondents cite no State authorization for creating a separate tenure area for speech and drama. (See Board of Educ., Union Free School Dist. No. 4 v. Nyquist, 69 Misc 2d 956.) Indeed, Mr. McCarthy’s teaching was done all full-time at a single-grade level, junior high school, and a thorough study of the record reveals that his instruction of speech and drama was an integral part of work done generally within the English Department. The State Education Department lists in its “ Assignment Codes for Classroom Teachers in the Fall of 1970 ”, “ Dramatics and/or the Theater”, and “ Speech (not correctional) ” under the over-all heading of “ English Language ”. The observation reports of Mr. McCarthy’s classes, made, incidentally, with high praise of his ability by members of the Toaz English Department, show that he was not teaching speech as a therapeutic or correctional subject, such as appears to be the meaning of classifying “ speech ” as a “ special subject ” for purposes of issuing a “ special” teacher’s certificate. (8 NYCRR 80.1 [a] [27].) Rather, his courses were adjuncts to English, stressing such skills as pronunciation, word building and spelling. In fact, it appears that during 1969-71, before his formal transfer, he was assigned to teach classes regularly scheduled in the English Department. Perhaps most conclusive, the Superintendent himself, in letters to Mr. McCarthy’s Selective Service Board in August, 1968 and April, 1970, described him as a “ teacher[s] of English ” and as employed “ full time as a Speech and English teacher ”.
The proof is overwhelming that Mr. McCarthy’s instruction over his four-year employ at Toaz was under the aegis of the English Department and is properly classified within that overall' tenure area as a junior high school grade level teacher, not as fractionated by the board.
*230 D. TENURE ACHIEVED BY SERVICE OP APPLICABLE PROBATIONARY TERM
But, the board and Superintendent would rejoin, even with his service credited towards tenure from September 1, 1968, Mr. McCarthy never served out the applicable probationary period, which they claim, was established as five years by the 1971 amendments to section 3012 of the Education Law. Yet, a close analysis of the statutory developments in 1971-72 reveals that the now effective five-year probationary term did not apply to the petitioner at the critical time.
While the traditional three-year teacher probationary period was lengthened to five by the Legislature as of May 9, 1971 (L. 1971, ch. 116) that' modification was only the beginning of recently imposed statutory changes in tenure rights. Less than two months later, when the injustice of adding two more probation years to teachers imminently approaching their third service year was apparently realized, the Legislature enacted chapter 1102 of the Laws of 1971, retroactively suspending the effective date of chapter 116 until October 1,1971, and, in effect, rejuvenating temporarily the three-year probation period. Mr. McCarthy completed his third year of service and entered into his fourth on September 1, 1971, one month before the delayed five-year period was reinstituted. Therefore, the probation period upon his third anniversary of teaching service was, in fact, three years.
Tenure may be acquired in two ways, by specific award of the Board of Education, or by acquiescence, ‘1 where a teacher continues to teach beyond the expiration of the probationary term with the full knowledge and consent of the board of education where the bqard has failed to take the action required by law to grant or deny tenure ”. (Matter of Macera, 10 Ed. Dept. Rep. 232, 233; see Matter of Nyboe v. Allen, 10 Misc 2d 895, affd. 7 A D 2d 822; Matter of O’Connor v. Emerson, 196 App. Div. 807, affd. 232 N. Y. 561.)
There is some indication in the record that the board in a meeting on November 3, 1971 granted petitioner tenure. (See, minutes of board meeting of November 3, 1971 in which petitioner’s name is listed as a “ Tenure Appointment ” and not carried on the list of probationary teachers that follows.).
Indeed, this recognition by the board would have been appropriate in view of the 1971-72 appointment being for Mr. McCarthy’s fourth continuous year of teaching junior high. In-any event, in September, 1971, Mr. McCarthy served beyond *231 Ms probationary term without any board action regarding tenure, and was therefore accorded tenure by acquiescence. Thereafter, he couM not be discharged from employment without proper cause, notice and a hearing. (Education Law, § 3020-a.)
The later 1972 amendment to section 3012 of the Education Law wMch extended probationary periods to June 30, 1972 for certain teachers, did not affect Mr. McCarthy, who became a tenured teacher on September 1, 1971, because it specifically provided: “ This act shall not apply to any school district employee holding tenure in a position on October first, nineteen hundred seventy-one during such employee’s continued service in that position ”. (L. 1972, eh. 953, § 7.)
E. HO PROPER TERMIHATIOH
The board’s further contention, that the termination of Mr. McCarthy’s service as a speech and drama teacher in June, 1971 by itself halted the probationary period clock, is untenable since (1) the board apparently did not follow the requisite probation termination procedures of obtaining a recommendation from the Superintendent and acting upon it by resolution (Education Law, § 3012, subd. 1; Matter of Gumpert, 9 Ed. Dept. Rep. 126) and (2) in any event, the board by later rehiring petitioner to teach English effectively nullified its own notice of termination. (Matter of Harding, 10 Ed. Dept. Rep. 33.)
Moreover, assuming that petitioner’s position were “ abolished ” in 1971, there is substantial indication in the record that Mr. McCarthy’s seniority rights were not respected under section 2510 of the Education Law, irrespective of tenure, in that the board has not rebutted the proof of other “ abolished ” teachers with less employment duration being given teaching positions in the English Department ahead of petitioner.
F. OOHCLTTSIOH
Accordingly, respondents’ motion to dismiss is denied. The petition is granted, respondents’ determination to terminate petitioner’s employment and to deny him tenure is annulled as arbitrary and erroneous as a matter of law, and respondents are directed to reinstate petitioner to the position of teacher at the júnior Mgh school grade level, retroactive to the beginning of the 1972-73 school year.