Chief Judge Breitel.
In an article 78 (CPLR) proceeding, petitioner seeks reinstatement and recognition of her tenure as a Mental Hygiene Assistant Therapist Aid at the Wassaic State School. Respondent, the school’s acting director, summarily dismissed petitioner after having employed her for eight weeks beyond the maximum probationary term in what was asserted to be a different work shift at the school’s infirmary. Special Term granted the petition for reinstatement. The Appellate Division affirmed, one Judge dissenting, and the director appeals.
*179 The issue is whether petitioner’s eight additional weeks of employment constituted a second probationary term in a “different assignment”. If so, then her dismissal was a proper exercise of the appointing officer’s discretion under the Rules and Regulations of the Civil Service Department (4 NYCRR 4.5 [a] [3]). If not, then petitioner obtained tenure when employed beyond the maximum probationary term, and her dismissal was wrongful.
The order of the Appellate Division should be affirmed. Although a transfer between work shifts might qualify as a “different assignment” under Civil Service Rule 4.5 (subd [a], par [3]), petitioner was never notified that she was entering upon a second probationary term in a "different assignment”. Petitioner’s additional service must therefore be credited to her original probationary term, and she obtained tenure when she was employed beyond the maximum statutory period.
Petitioner’s probationary period began on September 28, 1972, when she was assigned to the day shift at Wassaic State School’s D-Infirmary. On November 12, 1972, she was transferred to the evening shift of the same infirmary. Three days later she was notified that her probationary period would be ending March 29, 1973. Petitioner alleged that during the early part of March she requested a return to the day shift. This was effected during the last week of March, at which time petitioner was notified, orally and by letter, that her probationary period was being extended another eight weeks, to May 24, 1973. On that date, petitioner was dismissed without hearing as a probationary employee.
The director contends that in dismissing petitioner, he was acting pursuant to rule 4.5 (subd [a], par [3]) of the Rules and Regulations of the Civil Service Department (4 NYCRR 4.5 [a] [3]), the pertinent provisions of which are as follows: "An appointment shall become permanent upon the completion of the minimum period of probation unless the probationer, prior to the completion of such service, is given written notice that the probationary term will be continued. If the probationary term is so continued, the appointment shall become permanent upon the retention of the probationer after his completion of the maximum period of service or upon earlier notice that his probationary term is successfully completed. If the conduct or performance of the probationer is not satisfactory, his employment may be terminated at any time after the completion of the minimum period of service and on or before *180 the completion of the maximum period of service. The appointing officer may, however, in his discretion, offer such probationer an opportunity to serve a second probationary term of not less than four nor more than 12 weeks in a different assignment, in which case the appointment may be made permanent or the employment terminated at any time after the completion of the minimum period of service and on or before the completion of the maximum period of service in the same manner as herein provided for the original probationary appointment.” (For the court’s recent interpretation of a comparable regulation, see Matter of Albano v Kirby, 36 NY2d 526.)
The director’s position is that petitioner’s work had been unsatisfactory during her first probationary term, and the eight-week extension after her transfer to the day shift represented "a second probationary term * * * in a different assignment”, for purposes of further evaluation.
Special Term’s judgment granting the petition for reinstatement turned on a ruling that the transfer from one work shift to another in the same infirmary could not constitute a "different assignment” under rule 4.5 (subd [a], par [3]). This court, while reaching the same result, hesitates to adopt this reasoning. The rule, if properly executed, is largely beneficial to the employee (cf. Matter of Albano v Kirby, 36 NY2d 526, supra). Often unsatisfactory ratings by a superior will result from interpersonal conflicts alone. In determining whether another probationary term is necessary as the only alternative to dismissal, the administrator should be given latitude in defining a "different assignment” for purposes of fresh evaluation. It cannot be said that the director’s interpretation of "different assignment” was here erroneous, particularly in that there was a change in petitioner’s direct supervisors.
An affirmance is nevertheless indicated because the petitioner received insufficient notice of the procedures the director had purportedly invoked. It is alleged, and not denied, that petitioner received only notice, orally and in writing, that her probationary term was being extended for eight weeks, but without indication that it was related to a different assignment. It does not appear in this record that petitioner was ever notified that her first probationary term had proven unsatisfactory, and that she was therefore being given a second probationary term in a "different assignment” pursuant to rule 4.5 (subd [a], par [3]). Nor, for that matter does it *181 appear in the record that any notation or memorandum had been made in the internal records of the agency to show that a new probationary term based on a different assignment had been made.
So employed, rule 4.5 (subd [a], par [3]) could be a ruthless device to retain temporarily the services of probationary employees while denying them tenure. The need for probationary employees having clear and explicit notice as to their current standing and condition of employment, cannot be overemphasized (see Matter of Baer v Nyquist, 34 NY2d 291, 296-297). The insecurities of probationary status will often induce employees, particularly in troubled times, to submit to unreasonable extensions by administrators. Examples of possible abuse are many (see, e.g., p 299; Matter of Becker v Board of Educ., 9 NY2d 111, 116).
Although as Special Term observed, rule 4.5 (subd [a], par [3]) does not explicitly require written notice in connection with a second probationary term appointment, to avoid unseemly conflicts written notice would be desirable. Notice, written or oral, spelling out the regulation invoked, would alone be consonant with the tenure provisions of the Civil Service Law. Indeed, the regulation requiring written notice where the administrator extends the first probationary period beyond its minimum statutory duration, would be equally well-served by written notice of any extension reciting that the extension was based on a "different assignment” within the meaning of the rule.
Accordingly, the order of the Appellate Division should be affirmed, with costs.